IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACT II JEWELRY, LLC, a Delaware limited liability corporation, d/b/a lia sophia, and KIAM EQUITIES CORPORATION, a Delaware corporation, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>ELIZABETH ANN WOOTEN, an individual, and )<br>ADORNABLE-U, LLC, a Delaware limited liability )<br>company, NICOLE MEAD, SHANNON ECKELS, )<br>and BECKA DAUN, )<br>)<br>Defendants. )<br>) | Case No.   15-cv-06950<br><br>Hon. Harry D. Leinenweber<br><br>Mag. Judge Geraldine Soat Brown |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR REMAND TO STATE COURT**

Jeffrey A. Risch
Michael F. Hughes
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, Illinois 60174
(630) 587-7910
Fax: (630) 587-7960

Jeffrey M. Glass
SmithAmundsen LLC
308 W. State Street, Suite 320
Rockford, Illinois 61101
(815) 904-8804

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR REMAND TO STATE COURT

Plaintiffs, ACT II JEWELRY, LLC ("Act II") and KIAM EQUITIES CORPORATION ("KEC"), through their attorneys, SmithAmundsen LLC, submit this memorandum of law in support of their Motion for Remand to State Court.

### I. FACTUAL BACKGROUND

Plaintiff Act II is a company that until recently was engaged in the design and sale of fashion jewelry using the "party plan" model.[1] *See* DKT#3-1, Second Amended Verified Complaint ("SAVC"), ¶ 1.) Defendant Elizabeth Ann Wooten ("Wooten") was Act II's Vice-President of Merchandising, a roughly $300,000 per year position with responsibility for designing jewelry and developing collections. (*Id.*, ¶¶ 2, 19-25.)

When she joined Act II in 2011, Wooten entered into a Confidentiality, Non-Disclosure and Developments Agreement ("Developments Agreement"). (*Id.*, EX B.) She agreed that, in consideration for her compensation, all Developments related to Act II's business that Wooten might develop, jointly or with others, were the sole and exclusively property of Act II. (*Id.*, ¶ 4.) She also entered into a Loan Agreement, obtaining a $300,000 loan that would be forgiven if she were still employed and not terminated for cause on or before December 31, 2014. (*Id.*, EX C.)

In the Fall of 2014, Act II decided to wind down its party plan business, effective February 28, 2015. (*Id.*, ¶¶ 1, 10-13.) Wooten and the Plaintiffs revisited her contracts to address her obligations through the wind-down period. She entered into a Key Employee Incentive Bonus Agreement (*Id.*, EX E) in which she agreed that, until the wind-down was completed on February 28, 2015, she would comply in full with the Developments Agreement, and "not engage in outside professional activities that would interfere with the performance of her duties."

---

[1] "Party plan" refers to in-home sales by independent sales agents, similar to Tupperware parties.

(*Id.*, ¶¶ 1, 3, 4.) She also agreed to amend her Loan Agreement to provide that the loan would be forgiven provided she was still employed on February 28, 2015, or if she was terminated without cause prior to that date. (*Id.*, EX C, ¶ 5.)

Act II announced on December 1, 2014 that its direct sales operations would terminate on December 31, 2104. (*Id.*, ¶¶ 1, 10-13.) Act II's sales reps were looking for new opportunities as soon as the wind-down was announced. (*Id.*, ¶85.) They needed to earn an income starting in January 2015. (*Id.*) Many established direct sales companies were options for them. Wooten decided to start a jewelry company and try to recruit Act II's sales force *en masse*. (*Id.*, ¶¶ 78-85). Although it took Act II 40 years to develop its sales force, Wooten thought she could recruit a large portion of these representatives virtually overnight. This would be very lucrative to Wooten and her senior leaders if they could do it.

Thus, Wooten had to have her company up and running – with jewelry, catalogues, ordering systems, etc. – in January 2015. Moreover, she had to do this while under contract to the Plaintiffs through February 28, 2015. Tellingly, Wooten asked Act II to be released early from her obligations under the Incentive Agreement. (*Id.*, ¶ 89.) Act II denied her request.

Heedless of her obligations, Wooten proceeded during late 2014/early 2015 to feverishly set up her business, Defendant "Adornable-U,LLC" ("AU"), through a variety of actions, all concealed from Plaintiffs, that flagrantly breached her obligations. These are described in detail in the SAVC. (*Id.*, ¶¶ 72-90.) One of the main breaches is that, because she needed a jewelry collection and did not have time to develop one by proper means, she used the Spring/Summer 2015 collection she developed for Act II as the backbone of her new company's collection. (*Id.*, ¶ 85.)

Events came to a head on January 21, 2015, when Wooten published AU's catalogue on line. (*Id.*, ¶¶ 93-98.) Plaintiffs were aghast to see that ninety-nine styles were either pieces previously sold by Act II or pieces from the Spring/Summer 2015 collection that Wooten had developed for Act II. AU

Plaintiffs did not seek to put AU out of business, but they did demand that the styles in question be removed. (*Id.*, ¶¶ 111-120.) Wooten refused. Plaintiffs terminated her for cause on February 9, 2015. Prior to filing this lawsuit, Plaintiffs tried for nearly two months to settle, but Wooten pulled out of negotiations. .

## II.  PROCEDURAL BACKGROUND

On March 20, 2015, Plaintiffs commenced this suit in the Circuit Court of Cook County, Illinois (the "State Court") by filing a Verified Complaint (the "Initial Complaint"). The Initial Complaint named two defendants, Wooten and AU, LLC ("AU") (the "Initial Defendants"). The Initial Complaint raised the following claims: Count I (Breach of Confidentiality Agreement vs. Wooten); Count II (Breach of Loan Agreement vs. Wooten); Count III (Breach of Key Employee Incentive Bonus Agreement vs. Wooten); Count IV (Breach of Fiduciary Duty vs. Wooten); Count V (Tortious Interference with Contracts vs. AU); Count VI (Violation of the Illinois Trade Secrets Act vs. Initial Defendants); Count VII (Civil Conspiracy vs. Initial Defendants); and Count VIII (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act vs. Initial Defendants).[2]

The Initial Complaint sought well in excess of $75,000, specifically seeking the repayment by Wooten of the $300,000.00 loan, in addition to other measures of monetary damages and an order requiring Defendants to stop selling the styles in question. Defendants were served with process on March 20, 2015. There was complete diversity of citizenship

---

[2] The initial Complaint was filed under seal because two exhibits were confidential.

between the Plaintiffs (KEC is a citizen of both Delaware, its state of incorporation, and New York, its principal place of business; Act II, as a limited liability company with its sole member being KEC, has the same citizenship as KEC) and the Initial Defendants (Wooten is a citizen of Texas; AU, as an LLC whose sole member is Wooten, is a citizen of Texas). *See* Defs.' Notice of Removal, DKT #1, ¶¶ 10-12, 14-15.

On May 1, 2015, Plaintiffs filed an Amended Verified Complaint. Although styled as an "amended" pleading, there were no substantive changes. Rather, certain changes were made with respect to two exhibits that allowed it to not be filed under seal.

Initial Defendants aggressively litigated the case and filed a unceasing barrage of motions, many on an emergency basis. The focus of their efforts was to (1) block discovery and (2) obtain dismissal of the case with prejudice. Due to Defendants' tactics, the parties and the Court invested an extraordinary amount of time and resources briefing and arguing the issues. As a review the docket shows, there were 12 motions filed, requiring 25 briefs, and 14 hearings in less than five months, almost all instigated by Defendants. The overall theme of Defendants' repeated motions, described more fully below, was that the State Court should resolve their Motion to Dismiss before allowing discovery to proceed. Those efforts were unsuccessful. Tellingly, Defendants' first move in this Court was to file yet another motion to stay discovery, relying largely on the same arguments the State Court had repeatedly rejected.

On May 21, 2015, Initial Defendants filed a Section 2-615 Motion to Dismiss in which they sought dismissal of the Amended Complaint in its entirety and with prejudice. *See* DKT#6-10. Both prior to the filing of Defendants' Motion to Dismiss, and during its pendency, fact discovery proceeded as to the parties and third parties. Five depositions were taken of current or former AU sales advisors. Counsel for Defendants attended the depositions and examined the

witnesses. Defendants also moved for and obtained an Order entitling them to fifty percent of deposition time for their questioning. *See* DKT#8-3. Twenty-one third-party document subpoenas were served by the Plaintiffs. Defendants served two third-party document subpoenas. The parties exchanged document requests and interrogatories and responded to same, and conducted Rule 201(k) negotiations as to alleged deficiencies in each sides' responses. Defendants also served two sets of Requests to Admit and a Motion to Strike Responses to Requests for Admission. DKT#9-1.

Prior to the hearing on the Motion to Dismiss, Plaintiffs sought leave to the file the SAVC. The SAVC added new allegations against the Initial Defendants based on facts learned in discovery and also added three new Defendants: Shannon Eckels, Becka Daun, and Nicole Mead (the "New Defendants"). The SAVC also addressed certain pleading issues raised in the Motion to Dismiss.

Initial Defendants opposed Plaintiffs' motion for leave to amend. In their opposition brief, filed July 15, 2015, they implored the State Court to deny the motion for leave because the amendments were "futile" and failed to state a claim. Initial Defendants also requested that the State Court first decide their Motion to Dismiss on the merits, and also allow Initial Defendants to file a motion attacking the claims against the New Defendants on the merits, before deciding whether to allow the filing of the SAVC. *See* DKT #8-9. The State Court, however, denied Initial Defendants' arguments as to the "futility" and other alleged infirmities of the claims in the SAVC, and granted Plaintiffs leave to file the SAVC, which added the New Defendants.

Also on July 15, 2015, Defendants filed a Motion to Stay Third Party Discovery and Limit Oral Discovery. *See* DKT #8-10. This was their third written motion to limit/stay discovery. That motion was fully briefed but was not ruled on prior to the Notice of Removal.

At the July 15, 2015 hearing to present the Motion, counsel for Defendants orally moved for an order staying all discovery pending the filing of the SAVC, which Motion was denied.

The SAVC was filed on July 17, 2015, and the New Defendants were served with process and copies of the SAVC as follows: Daun on July 28, 2015; Mead on July 28, 2015; and Eckels on July 30, 2015. Notice of Removal, DKT #1, ¶¶ 5-7. On July 23, 2015, Defendants filed a Motion to Strike Requests to Admission Responses of Act II. *See* DKT #9-1. Also on July 23, 2015, Defendants filed a Motion to Compel responses to Interrogatories and Document Requests. *See* DKT #8-13. The Notice of Removal was filed before these could be heard by the Court.

On Monday, August 10, 2015 the New Defendants filed their Notice of Removal, removing this case to federal court, citing the purported consent of Initial Defendants. On August 17, 2015, Defendants filed a Motion to Stay Discovery. *See* DKT #33. This Motion was the **fifth** attempt by the Defendants to stay or limit discovery. Notably, large sections of the Motion to Stay Discovery filed in this Court after the removal were repeats of arguments made in the Defendants' prior, unsuccessful discovery motions in the State Court case.

The foregoing demonstrates that Initial Defendants substantially litigated the State Court case. This constituted a waiver of their ability to consent to removal. The unanimous consent of all Defendants to removal is lacking. Therefore, this case should be remanded.

### III. GENERAL REMOVAL/REMAND STANDARDS

Removal in cases with multiple defendants, like this case, requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C § 1446(b)(2)(A). Valid removal, therefore, requires the unanimous consent of all defendants. *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). In cases were multiple defendants are served at different times, § 1446(b)(2)(C) provides that when a later-served

defendant files a notice of removal, "any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."

A Plaintiff may move to remand a case to state court, on the basis of "any defect" by filing a motion to remand within 30 days of the Notice of Removal. 28 U.S.C. § 1447(c). A plaintiff's choice of forum is presumed valid and the Court must resolve any doubts about removal in favor of remand. *See, e.g.*, *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum"); *Schmude v. Sheahan*, 198 F. Supp. 2d 964, 966 (N.D. Ill. 2002) ("Generally, the removal statute is strictly construed, with an eye towards limiting federal jurisdiction"). Defendants bear the burden of establishing that all of the prerequisites for removal have been satisfied. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

## IV. ARGUMENT: THIS CASE MUST BE REMANDED FOR LACK OF UNANIMITY

### A. The Requirement Unanimity and The Waiver Of Consent

Pursuant to 28 U.S.C § 1446(b)(2)(A), "all defendants who have been properly joined and served ***must*** join in or consent to the removal of the action."[3] This is referred to as the rule of "unanimity" and, therefore, valid removal requires the consent of all defendants. *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). Here, at the time the Initial Complaint was filed and Initial Defendants were served, this case was immediately removable to federal court on the basis of diversity jurisdiction because complete diversity between the parties existed, and the jurisdictional amount of at least $75,000 was met. Initial Defendants, however, chose not to remove. To the contrary, they vigorously litigated the case in state court. They served document requests, interrogatories, requests for admission, and third-party subpoenas. They attended depositions and examined witnesses. They moved to dismiss the case in its entirety and with

---

[3] Unless otherwise noted, all emphases in this Memorandum are added.

prejudice. They filed numerous discovery motions. Having lost virtually all of these motions, the first thing they did upon removal was to make yet another attempt to obtain an order limiting or staying discovery based largely on the same arguments that the State Court had rejected.

While pursuant to 28 U.S.C § 1446(b)(2)(C), a defendant who fails to remove within the statutory 30-day period, may still be permitted to consent to a later-served defendant's otherwise timely removal, this right is waived if the defendant takes actions that manifest its clear intent to litigate in State Court. *See, e.g.*, *Radaszewski v. Garner*, No. 01 C 9551, 2002 WL 31430325, *3 (N.D.Ill. Oct. 21, 2002); *Fate v. Buckeye State Mutual Ins. Co.*, 174 F. Supp.2d 876, 881 (N.D.Ind. 2001). 28 U.S.C. § 1447(c) allows a Plaintiff to seek to remand, and the court to order such remand, on the basis of "any defect." Here, the case should be remanded to State Court because the Initial Defendants waived their right to consent to removal by virtue of their substantially and vigorously litigating in State Court.

Cases interpreting the current § 1447(c)[4] have found that the statute authorizes remand when defendants have waived the right to remove based on litigating the case in state court (*see, e.g.*, *id.* at 880-81; *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (waiver occurs by "taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court"); *Schmitt v. Ins. Co. of N. America*, 845 F.2d 1546, 1551 (9th Cir. 1988), *superseded on other grounds*, (remand for litigating in state court is "within the

---

[4] Prior to its 1988 revisions, § 1447(c) stated that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." Under the prior wording of the statute, a divided panel of the Seventh Circuit found that there was no statutory authority for remand based on a defendant' waiver of its right to removal for its litigation activity in state court. *Rothner v. City of Chicago*, 879 F.2d 1402, 1411, 1416 (7th Cir. 1989). The Seventh Circuit has not revisited the issue since the amendments to § 1447(c) dramatically changed its language, and district courts in this Circuit, such as *Radaszewski* and *Fate*, as described herein, have interpreted the amended language to allow remand for waiver by litigation.

bounds of section 1447(c)"); *Radaszewski,* 2002 WL 31430325 at *3 (amended § 1447(c) "has been interpreted broadly to include waiver of the right to removal in certain circumstances, such as when the party seeking removal evidenced an intent to litigate in state court")).

Moreover, courts interpreting the amended § 1447(c) in multi-defendant cases have held that such pre-removal litigation activities waive that specific defendant's ability to *consent* to removal by a later-served co-defendant, thereby making unanimous consent, as required by § 1446(b)(2)(A), impossible. *See, e.g.*, *Onders v. Kentucky State Univ.*, No. 3:11-45-DCR, 2011 WL 6009643, *2-3 (E.D. Ky. Dec. 1, 2011) ("When a defendant waives its right to remove by manifesting its intent to have its case adjudicated in state court, it also waives its right to consent to a notice of removal brought by a co-defendant.") citing *Francis v. Rust-Oleum Corp.*, No. CV 10-07885 DDP, 2011 WL 1540343, *1-2 (C.D. Cal. Apr 20, 2011) (finding defendants could not properly consent to a later-served defendants' removal, when the earlier-served defendants had waived removal through their state court litigation efforts).

Waiver is generally found if the actions by the defendant indicate an intent to have the case decided on the merits in state court (*i.e.*, filing a motion to dismiss or counterclaim in state court). *See Radaszewski,* 2002 WL 31430325 at *3, citing *Texas Wool & Mohair Mktg. Assoc. v. Standard Accident Ins. Co.*, 175 F.2d 835, (5th Cir. 1949); *Fate,* 174 F. Supp. 2d at 881-82*; Brown v. Sasser*, 128 F.Supp.2d 1345, 1347 (M.D. Ala. 2000); *FDIC v. Greenhouse Reality Assoc.*, 829 F.Supp. 507, 511-12 (D. N.H. 1993).

### B. <u>Initial Defendants Have Waived Their Ability To Consent to Removal, Destroying the Possibility of Unanimity</u>

In the present case, there can be no unanimity of consent to removal by all Defendants because Initial Defendants have waived their ability to consent by their clear and unmistakable manifestation to have the State Court adjudicate this case on the merits. As described above,

Initial Defendants engaged in extensive litigation, written and oral discovery, and motion practice in the State Court for nearly five months. In nearly all of their motions and briefs to the State Court, Initial Defendants implored the State Court to decide the entire case on the merits.

Specifically, soon after being served with the Initial Complaint, Initial Defendants filed an "Emergency Motion for Entry of a Protective Order and Case Management Order." DKT #5-3. That Emergency Motion requested the State Court to stay discovery and prevent Plaintiffs from contacting AU's independent sales advisors until after a case management conference was held, which Defendants argued should be after they considered "whether to file a motion to dismiss one or more of the counts of the Complaint." *Id*., p. 12, ¶ 39. Initial Defendants informed the State Court that they "intend[ed] to file a counterclaim for, among other things, the wages, bonus and severance pay that Plaintiffs owe to [Wooten], and, potentially, for defamation and tortious interference…." *Id*. at ¶ 40. They implored the State Court to invoke a stay of discovery and other measures based on the very fact that Defendants intended to submit their motion to dismiss and counterclaims to the State Court. The State Court denied the Emergency Motion as it related to staying discovery or contacting the advisors. DKT #5-8.

Thereafter, Initial Defendants unequivocally informed the State Court that it desired to address the case on the merits. On April 23, 2015, Initial Defendants filed "Defendants' Motion for Entry of a Protective Order or To Quash or Modify Subpoenas." DKT #6-2. That motion, like their earlier (and denied) Emergency Motion, sought to stay of discovery "pending the *resolution* of Defendants' motion to dismiss"; to limit Plaintiffs' contact with the independent advisors; and to quash or modify the issued third-party subpoenas. *Id*. at p. 1 (emphasis added). Defendants again informed the State Court: "Defendants are in the process of drafting a motion to dismiss that, if granted, will narrow the scope of this litigation. Defendants ask the Court to

stay discovery pending the *resolution* of Defendants' forthcoming motion to dismiss." *Id*., p. 2 (emphasis added). In clear terms, Initial Defendants implored the State Court to <u>resolve</u> its forthcoming motion to dismiss on the merits.

After their second motion to stay was denied, and after Plaintiffs had filed an Amended Complaint (that was substantively identical to the Initial Complaint), Initial Defendants, on May 21, 2015, filed their "Section 2-615 Motion to Dismiss." DKT #6-9. The Motion to Dismiss sought to dismiss the Amended Complaint on the merits, "in its entirety, with prejudice". *Id*. at p. 1. Defendants argued in the Memorandum in Support of their Motion to Dismiss that:

(i) Count I for breach of Confidentiality Agreement should be dismissed on the merits because: (a) "The Key Contractual Provisions Are Unenforceable," (b) "The Restrictive Covenants Were Superseded," (c) "The Existence of Trade Secret" had not adequately been alleged, and (d) an alleged lack of identification of Confidential Information retained by Wooten. (DKT #6-10, pp. 2-7);

(ii) Count II for breach of Loan Agreement should be dismissed because the plain language of the agreement showed Wooten adhered to its terms. (*Id*., p. 8);

(iii) Count III for breach of Incentive Agreement should be dismissed for the same reasons as Count, and for failure to allege adequate facts. (*Id*. pp. 8-11);

(iv) Count IV for breach of fiduciary duty should be dismissed because Illinois law allowed Wooten to take certain preparatory actions to compete with Plaintiffs even while she still worked for them. (*Id*. p.p. 11-12);

(v) Count V for tortious interference with contract should be dismissed because inadequate facts were alleged, Wooten could not interfere with her own contract, and the underlying contracts had not been breached. (Id., pp. 12-13);

(vi) Count VI for violations of the Illinois Trade Secrets Act should be dismissed because the information is not trade secrets under the Act. (*Id*., pp. 13-14);

(vii) Count VII for civil conspiracy should be dismissed because a principal and agent cannot engage in a conspiracy and for of lack of adequate pleading. (*Id*., p. 14);

(viii) Count VIII under the Illinois Consumer Fraud Act should be dismissed for lack of pleading with the requisite specificity. (*Id*., pp. 14-15).

The State Court ordered a briefing schedule and status to set a hearing on the Motion. Clearly, the Motion to Dismiss manifested Initial Defendants' unequivocal intention to submit

11

the case to the State Court for adjudication on the merits. The Motion to Dismiss was not simply a motion for some procedural defect in the Complaint. Rather, it was comprehensive, attacking the Amended Complaint on the merits of each of its claims.

Thereafter, when the Plaintiffs sought leave to file the SAVC to add the New Defendants, Initial Defendants again pleaded with the State Court to reach an immediate *resolution* of the case on the merits. In their "Response to Plaintiffs' Motion for Leave to File Second Amended Verified Complaint," Initial Defendants argued that they "should be permitted to file a motion contesting the validity of those [new] claims and the Motion for Leave should be entered and continued until this Court determines whether Plaintiffs can state a claim against the new defendants." DKT #8-9, p. 1. They further argued that leave to file the SAVC should be denied because it "does not remedy the pleading deficiencies in the prior complaint." *Id*. In that same brief, Initial Defendants further argued that the new claims asserted against the New Defendants were "futile," "incredibly weak" and "susceptible to dismissal for failure to state a claim." *Id*., p. 2. They further "respectfully request[ed] that the [State] Court allow them to brief the issue of whether the claims against the three new defendants state a legally cognizable cause of action. If they do not, the [State] Court should deny Plaintiffs' Motion for Leave. And in the meantime, the motion should be entered and continued." *Id*., p. 3. If their intent to have the State Court adjudicate the case on the merits was not yet abundantly clear, Initial Defendants again pleaded with the State Court to immediately consider their Motion to Dismiss,:

> Defendants filed a motion to dismiss the First Amended Verified Complaint that, if granted, would dispose of the entire case. Further, if the motion were granted, a number of the counts in the First Amended Verified Complaint would have been dismissed with prejudice. The proposed Second Amended Verified Complaint does not remedy the defects in the previous complaint. Moreover, the counts that would have been dismissed with prejudice still are subject to such dismissal (most notably, Plaintiffs' counts for breach of loan agreement, conspiracy, tortious interference with contract and deceptive trade practices). Plaintiffs plan is clear.

> They cannot win on the merits so they need to extend the life of their lawsuit as long as possible by filing amendments so Defendants' motion to dismiss is not heard. … [F]or this additional reason, the Motion for Leave should be denied and the Court should rule on Defendants; motion to dismiss.

*Id*., p. 4. The State Court denied their opposition and granted Plaintiffs leave to file the SAVC.

Moreover, along with filing their opposition to Plaintiffs' Motion for Leave to File the SAVC, Initial Defendants filed yet another "Motion to Stay Third-Party Discovery and Limit Oral Discovery." In their Reply Memorandum on that motion, filed after all of the New Defendants had been served, and just 7 days prior to removal, Initial Defendants again reiterated their intent to litigate the case in State Court. Specifically, they argued, "Plaintiffs' claims [in the SAVC] are without legal basis and should be dismissed, with prejudice, as Defendants' renewed motion to dismiss will show." DKT#10-9, p. 2. They further pleaded with the State Court: "For the sake of efficiency, our motion to dismiss should be decided before any third-party discovery continues." Initial Defendants then argued the merits of each of the claims in the SAVC in an effort to have the court rule on their motion to dismiss, while staying discovery. *See id*. at p. 3 (stating, with respect to the breach of Loan Agreement claim, "[Wooten] denies the validity of that claim and will show that it has no legal basis."); *id*. (stating, with respect to the "Jewelry Claims," that "Defendants' motion to dismiss will demonstrate that the provisions are not enforceable as a matter of law, because [lia sophia] has no proprietary interest in the jewelry designs" and citing case law and statutes they argue show "Plaintiffs have no claim of any kind with respect to the 52 styles [of jewelry]").

The Initial Defendants did much more than simply engage in procedural or defensive litigation meant to maintain the status quo in the State Court. Rather, they actively and substantially litigated the matter, filing multiple motions and briefs as described in detail herein, each imploring the State Court to reach a decision on the merits of the claims. Initial Defendants

also engaged in substantial discovery, issuing third-party subpoenas and examining deponents. Only after the State Court denied their requested relief related to the merits (denying their motions to stay discovery, which motions Initial Defendants' premised on arguments going to the underlying merits of the lawsuit; and denying their opposition to the filing of the SAVC, which Initial Defendants opposed based on the merits of the Amended Complaint and the SAVC), did Initial Defendants then "consent" to removal.

This is precisely the situation that other courts have found to result in waiver, and in the waiver of the ability to consent to a later-served defendant's removal. For example, just recently in *Harvey v. Ute Indian Tribe*, No. 2:13–CV–00862, 2014 WL 2967468, \*3 (D.Utah July 1, 2014) *affirmed*, --- F.3d --- (10th Cir. Aug. 13, 2015), the court found the defendants waived their right to remove, and also their ability to consent to later-served defendant's removal, because the earlier-served defendants had filed and briefed a motion to dismiss. *Id*. Likewise, in *Fate*, the court found that a defendant's filing of a motion to dismiss and litigating in state court for nearly a year resulted in waiver of the right to remove. *Fate*, 174 F. Supp.2d at 882. In *Onders*, the defendant filed a motion for summary judgment, which the court found acted as a waiver, even though it was not decided prior to removal. *Onders*, 2011 WL 6009643, \*2-3.

There can be no doubt that Initial Defendants manifested an intent to have the State Court adjudicate the claims on the merits. They filed a detailed Motion to Dismiss, attacking every aspect of the claims on a substantive basis, seeking dismissal with prejudice. They requested that the State Court deny leave to file the SAVC, in order that the State Court could proceed to determining the merits of the Motion to Dismiss. They attacked the new claims in the SAVC and requested that the State Court allow them to brief those new claims in an attempt to dispose of them on the merits. They sought to grind discovery to a halt on the purported basis that the

State Court should first *resolve* the pending Motion to Dismiss, which Defendants claimed would likely dispose of the case in its "entirety," or at least "narrow the issues" for discovery. Accordingly, the Initial Defendants have waved their ability to remove this case to federal court.

This outcome is not changed even though the removal statute, at § 1446(b)(2(C), was recently revised to adopt the "last-served defendant" rule. The revision to that statute to codify the last-served defendant rule, "simply does not address the separate issue of waiver of removal, and courts have continued to apply that doctrine even after the effective date of the changes to § 1446(b)(2)." *Propane Resources Supply & Marketing, L.L.C. v. G.J. Creel & Sons, Inc.*, No. 12-2758-JTM, 2013 WL 1446784, *2 (D. Kan. Apr. 9, 2013). "When a defendant waives its right to remove by manifesting its intent to have its case adjudicated in state court, it also waives its right to consent to a notice of removal brought by a co-defendant." *Onders*, 2011 WL 6009643, *2-3. Additionally, "the inability to remove due to a co-defendant's earlier voluntary waiver is the functional equivalent of that co-defendant simply refusing to consent to removal, which is its prerogative," and there should not be "a loophole that would allow [a defendant] to 'take back' its original decision to proceed in state court." *Id*. Here, because the Initial Defendants took substantial litigation efforts in the State Court, they have waived any right to remove the action to federal court and, consequently, they have no ability to consent to the removal by the New Defendants. Accordingly, because there is no unanimous consent to removal by all Defendants, this case should be remanded back to State Court.

## IV.  CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion, remand this case back to the Circuit Court of Cook County, Illinois, and grant Plaintiffs their costs and attorneys' fees as allowed under 28 U.S.C § 1447(c), related to the defective removal of this action.

Dated: August 31, 2015             **ACT II JEWELRY, LLC, d/b/a "lia sophia" and KIAM EQUITIES CORPORATION**

/s/ Michael F. Hughes
Michael F. Hughes
mhughes@salawus.com
Jeffrey A. Risch
jrisch@salawus.com
SmithAmundsen LLC
3815 E. Main Street, Suite A-1
St. Charles, Illinois 60174
(630) 587-7925
Fax: (630) 587-7395

Jeffrey M. Glass
SmithAmundsen LLC
308 W. State Street, Suite 320
Rockford, Illinois 61101
(815) 904-8804

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2015, I electronically filed the foregoing ***Plaintiffs' Memorandum of Law in Support of their Motion for Remand to State Court*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bradley P. Nelson
FisherBroyles, LLP
345 North Canal Street, Suite C202
Chicago, IL 60606
Email: brad.nelson@fisherbroyles.com
*Attorneys for Defendants*

I hereby certify that I have mailed by United States Postal Service the document to any non CM/ECF participants.

Respectfully Submitted,
**ACT II JEWELRY, LLC, d/b/a lia sophia, and KIAM EQUITIES CORPORATION**

By: /s/ Michael F. Hughes
*One of Plaintiffs' Attorneys*