```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION
```

ACT II JEWELRY, LLC, a
Delaware Limited Liability
Corporation d/b/a Lia
Sophia; and KIAM EQUITIES
CORPORATION, a Delaware
Corporation,

                Plaintiffs,

      v.

ELIZABETH ANN WOOTEN;
ADORNABLE-U, LLC, a Delaware
Limited Liability Company;
NICOLE MEAD; SHANNON ECKELS;
and BECKA DAUN,

                Defendants.

_____

ELIZABETH ANN WOOTEN;
ADORNABLE-U, LLC, a Delaware
Limited Liability Company;
NICOLE MEAD; and SHANNON
ECKELS,

      Counterplaintiffs/
      Third-Party Plaintiffs,

      v.

ACT II JEWELRY, LLC, a
Delaware Limited Liability
Company; and KIAM EQUITIES
CORP., a Delaware
Corporation; VICTOR K.
KIAM III; and ELANA KIAM,

      Counterdefendants/
      Third-Party Defendants.

Case No. 15 C 6950

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions: a Partial Motion to Dismiss Additional Parties [ECF No. 199] brought by Defendants Elizabeth Ann Wooten, Adornable-U, LLC, Nicole Mead, Shannon Eckels, and Becka Daun (collectively, the "Defendants") and a Motion for Summary Judgment on the breach of fiduciary duty claim [ECF No. 202] brought by Defendant Elizabeth Ann Wooten ("Wooten"). For the reasons stated herein, Defendants' Motion to Dismiss Certain Parties [ECF No. 199] is granted with leave to amend and Wooten's Partial Motion for Summary Judgment [ECF No. 202] is denied.

## I. BACKGROUND

The Court assumes familiarity with the underlying facts of this case as recited in its opinions [ECF Nos. 90, 95] granting in part and denying in part the parties' respective motions to dismiss the operative complaint and the counterclaims. *See, generally, Act II Jewelry, LLC v. Wooten,* No. 15 C 6950, 2016 WL 4011233 (N.D. Ill. July 27, 2016) (motion to dismiss the counterclaims); *Act II Jewelry, LLC v. Wooten,* No. 15 C 6950, 2016 WL 3671451 (N.D. Ill. July 11, 2016) (motion to dismiss the operative complaint). The facts relevant to the Motion to Dismiss were taken from the Third Amended Complaint and the facts relevant to the Motion for Summary judgment were taken from the parties' 56.1 statements.

Plaintiff Act II Jewelry, LLC ("Act II") was in the jewelry sales industry. (3d Am. Compl. ¶¶ 1, 11, ECF 188.) It marketed and sold jewelry by having a network of sales representatives hold parties in customers' homes, commonly known as the "party plan" business model. *Id.* Wooten was employed as Vice President of Product Development by Act II for approximately three and a half years from July 2011 to February 9, 2015. (Act II's Resp. to Wooten's Facts ¶ 14, ECF No. 214.) As Vice President of Product Development, Wooten selected, developed, and designed Act II's line of jewelry. (3d Am. Compl. ¶¶ 21-22.) Over the course of her employment, Wooten entered into several contracts with Act II, including a "Loan Agreement" between herself, Act II, and another company, Kiam Equities Corp. ("KEC"), pursuant to which Wooten was lent $300,000. (*Id.* ¶¶ 25-26, 51-61.) As consideration for the loan, Wooten agreed to repay KEC the principal amount plus interest, although the contract also specified circumstances in which the loan would be forgiven. (*Id.*)

On December 1, 2014, Act II announced it would be winding down its direct-selling, party plan jewelry business in the United States and Canada and its sales advisors would be selling its Fall/Winter 2014 collection at discounted prices through December 31, 2014. (*Id.* ¶ 13.) To ensure an orderly wind down process, Act II entered into a Key Employee Incentive Bonus Agreement (the "Incentive Agreement") with Wooten, which provided

financial incentives for Wooten to remain employed with Act II and work diligently during the wind down period. (*Id.* ¶¶ 62-71.) The only signatories to the Incentive Agreement were Act II and Wooten. (*Id.*)

When Act II decided to close shop, Wooten decided to open her own business in the same industry. (*Id.* ¶ 78-79.) On October 30, 2014, several months prior to her termination, Wooten incorporated Adornable-U, a direct-selling jewelry business. (*Id.*) The crux of the dispute is the propriety of Wooten's activities from October 2014 to her termination date with Act II on February 9, 2015. (*Id.* ¶¶ 72-130.) However, we need not delve into the details of her actions here. The pending Motion to Dismiss revolves around Wooten's relationship with KEC and one other company, not her relationship with Act II.

KEC was one of Act II's creditors. Following the wind down of Act II's business, Act II transferred its inventory and most of its other assets to KEC pursuant to an asset foreclosure. (3d Am. Compl. ¶ 1.) KEC then established K-FIVE LLC ("K-FIVE") as a Delaware limited liability company to market and license jewelry styles under Act II's brand through e-commerce channels. (*Id.* ¶ 3.) It is unclear exactly what rights were transferred from Act II to KEC and, similarly, from KEC to K-FIVE.

Relevant to Wooten's Partial summary judgment motion, Wooten was never a member, controlling member, manager, or director of

Act II. (Act II's Resp. to Wooten's Facts ¶ 16.)  Her sole
relationship with Act II was as an employee, even if a prominent
one.  Additionally, Wooten never played any role—employee, member,
manager, or director—at KEC or K-FIVE.  (*Id.* ¶¶ 18, 21.)

After a prior ruling which dismissed several counts, four
counts remain against Wooten:  the breach and default of the Loan
Agreement (Count II); the breach of the Incentive Agreement (Count
III); the breach of fiduciary duty (Count IV); and the violation
of the Illinois Trade Secrets Act (Count VI).  The Third Amended
Complaint alleges these same claims, but adds two new parties, KEC
and K-FIVE, as well as several counts that were previously
dismissed. (*See, generally,* 3d Am. Compl.) Defendants' Motion to
Dismiss takes issue with the additional parties and Wooten's
Motion for Summary Judgment deals exclusively with the breach of
fiduciary duty claim.  The Court takes each in turn.

## II.  **ANALYSIS**

### A.  **Motion to Dismiss**

#### 1.  *Standard of Review*

To survive a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), a complaint "must state a claim that is
plausible on its face."  *Adams v. City of Indianapolis,* 742 F.3d
720, 728 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550
U.S. 544, 570 (2007)).  When considering motions to dismiss under
Rule 12(b)(6), a district court accepts as true all well-pleaded

factual allegations and draws reasonable inferences therefrom in favor of the non-moving party. *See, e.g., Jakupovic v. Curran,* 850 F.3d 898, 902 (7th Cir. 2017). Documents attached to the Complaint are considered part of it. *See, e.g., Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005) (citing FED. R. CIV. P. 10(c)).

## 2. *Previously dismissed Counts I, V, VII, VIII, and XI*

Counts I, V, VII, VIII, and XI were dismissed with prejudice in this Court's Memorandum Opinion and Order dated July 11, 2016. (ECF No. 90.) Plaintiffs explained in a footnote that these counts were re-asserted in the Third Amended Complaint to prevent any argument of waiver on appeal. For the reasons expressed in its earlier opinion, Counts I, V, VII, VIII, and XI are dismissed with prejudice. *See, Act II Jewelry, LLC v. Wooten,* No. 15 C 6950, 2016 WL 3671451 (N.D. Ill. July 11, 2016).

## 3. *Additional parties for Counts II, III, IV, and VI*

Defendants move to dismiss KEC and K-FIVE from several of the remaining counts on the basis that they are not real parties in interest under Rule 17 of the Federal Rules of Civil Procedure. "[Federal Rule] 17(a) provides that '[e]very action shall be prosecuted in the name of the real party in interest.' The real party in interest is the one who 'by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.'" *Checkers,*

*Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338, 1343 (7th Cir. 1988) (quoting *Illinois v. Life of Mid-America Insurance Co.,* 805 F.2d 763, 764 (7th Cir. 1986)).

Defendants argue that KEC and K-FIVE are not the real parties in interest because absent from the Complaint is any allegation that Act II's contractual or other rights were assigned or transferred to KEC or K-FIVE. Plaintiffs contend that their Third Amended Complaint is sufficient, pointing to its allegations that most of Act II's inventory and assets were transferred to KEC and that K-FIVE was established to sell Act II's brand through e-commerce channels. (3d Am. Compl. ¶¶ 1, 3.) Plaintiffs rely on an Article III standing case, *Alliant Energy Corp. v. Bie,* to argue their allegations are sufficient. *See, Alliant Energy Corp. v. Bie,* 277 F.3d 916, 920 (7th Cir. 2002) ("It is easy to imagine facts *consistent* with this complaint and affidavits that will show plaintiffs' standing, and no more is required.").

Plaintiffs conflate Article III standing with Rule 17(a)'s real-party-in-interest requirement. "The requirements of Rule 17 should not be confused with the jurisdictional doctrine of standing." *Rawoof v. Texor Petroleum Co.,* 521 F.3d 750, 756 (7th Cir. 2008); *see also, Arbaugh v. Y&H Corp.,* 546 U.S. 500, 511 (2006). The federal rules, including Rule 17(a), do not confer or withdraw federal subject matter jurisdiction. Constitutional subject matter jurisdiction is a separate inquiry. The cases

cited by Plaintiffs, including *Bie,* relate to constitutional standing and do not address the Rule 17(a) issue at bar. *See, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 495-96 (7th Cir. 2005); *Bie,* 277 F.3d at 919-20 (7th Cir. 2002); *Native Am. Arts, Inc. v. Mangalick Enter., Inc.,* 633 F. Supp.2d 591, 596 (N.D. Ill. 2009).

Rule 17(a)'s real-party-in-interest requirement is better described as a codification of the principle that a litigant cannot sue in federal court to enforce the rights of third parties—in other words, a prudential limit on standing. *Rawoof,* 521 F.3d at 757. Rule 17(a) provides that actions must be brought in the name of the real party in interest, which is the term used to describe the person who, under the applicable substantive law, holds the substantive rights at issue. *Id.* at 756. It is not enough that a person stands to benefit from the suit; to be a real party in interest, the person must be the holder of the right or claim at issue. *Id.*

Plaintiffs claim their allegations are sufficient at this stage and that further information as to exactly who holds what rights is more properly addressed at summary judgment. This is incorrect. The proper time to bring the challenge is on a 12(b)(6) motion. *See,* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 17(a) ("The rules do not specify any

particular mechanism for challenging real party status. However, a person who does not hold a legally enforceable right—and therefore is not a real party in interest—fails to state a claim upon which relief may be granted."). In fact, failure to timely bring a Rule 17(a) challenge may result in waiver. *Id.* ("The failure to timely assert that the plaintiff is not the real party in interest may result in waiver of the objection."). Thus, whether KEC and/or K-FIVE are the "holder[s] of the right or claim" is the key question and now is the time to raise it.

Plaintiffs' answer to that question is, "They might be." They argue that "K-FIVE would *potentially* be a real party in interest with respect to some or all of those claims as a successor-in-interest or assignee of Act II." (Mem. in Opp'n Mot. to Dismiss at 7 (emphasis added); *Id.* at 8 (same argument as to KEC)). Rule 17(a) requires more than supposition. Plaintiffs cannot withstand a motion to dismiss on the basis that KEC or K-FIVE *may* be a successor-in-interest or an assignee of Act II. Plaintiffs must assert facts that actually demonstrate Rule 17(a)'s requirement is met; in other words, the allegations must establish that KEC and K-FIVE *is* a successor-in-interest or assignee. Defendants are entitled to know what entity has the right to bring a claim against them and under what legal basis.

The Court does not here decide if KEC and/or K-FIVE are real parties in interest, only that the Third Amended Complaint has

failed to allege sufficient facts to establish that they are. "There may be multiple real parties in interest for a given claim. For example, when a party partially assigns the rights to a claim, the assignor and the assignee each retain an interest in the claim and are both real parties in interest." 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 17(a) (internal quotations omitted); *see also,* 4-17 Moore's Federal Practice - Civil, § 17.11 (2018) (discussing partial and complete assignment regarding Rule 17's real party in interest requirement). Whether Act II's rights were assigned or transferred should not be guesswork for either the Court or defendants. The complainant must affirmatively allege who owns what rights and under what legal basis the plaintiffs are suing the defendants.

The Court now addresses the specific counts at issue. Turning to the breach of fiduciary duty claim (Count IV), Defendants argue that Wooten was never employed by KEC or K-FIVE and therefore never owed any fiduciary duty to either. Accordingly, no allegations exist to support a claim that Wooten owed a fiduciary duty to KEC or K-FIVE. Plaintiffs concede that Wooten had no employment relationship with K-FIVE and alleges no facts to indicate Wooten had an employment relationship with KEC that would create a fiduciary relationship. (Mem. in Opp'n to Defs.' Mot. Dismiss at 6-7; *see, generally,* 3d Am. Compl.) Accordingly, the

breach of fiduciary claim as to KEC and K-FIVE is dismissed without prejudice.

Turning to the breach of contract claims (Counts II and III), KEC and K-FIVE are not signatories to the Incentive Agreement in Count III and K-FIVE is not a signatory to the Loan Agreement in Count II. Nor is there any allegation in the Third Amended Complaint that Act II's rights under these agreements were assigned to either K-FIVE or KEC or that K-FIVE or KEC operate as a successor-in-interest to Act II. This ends the analysis. "[O]nly a party to a contract or those in privity with him may enforce the contract. . . . The mere fact that a person was injured by a breach of contract or that he acted in reliance on it does not create a right to pursue a claim for breach of contract which he otherwise would not have had." *Sabath v. Mansfield,* 377 N.E.2d 161, 168–69 (Ill. App. Ct. 1978) (citations omitted). As to Count II, K-FIVE is dismissed without prejudice. As to Count III, KEC and K-FIVE are also dismissed without prejudice. If certain contract rights were assigned, Plaintiffs must amend their Complaint to say so.

As to the Illinois Trade Secrets claim (Count IV), the Third Amended Complaint alleges only that Act II, and not KEC or K-FIVE, owned the trade secrets at issue. (3d Am. Compl. ¶¶ 15-19.) Further, the Third Amended Complaint also fails to allege that Act II's trade secrets were transferred to either K-FIVE or KEC.

Plaintiffs respond that both ownership and transfer were plausibly alleged in the Third Amended Complaint. The Complaint alleges: "Following the wind-down of the direct sales business, Act II's inventory and *most of* its other assets were transferred to a creditor (KEC) pursuant to an asset foreclosure" and that "K5 was established by KEC after KEC acquired the assets of Act II." (3d Am. Compl. ¶¶ 1, 3) (emphasis added). Alleging that most assets were transferred does not allege *what* assets were transferred and, more importantly, fails to answer whether Act II's trade secrets were transferred. Defendants should not have to guess whether trade secret rights were among the assets transferred to KEC in the asset foreclosure or furthermore whether KEC transferred those rights to K-FIVE when "K5 was established by KEC after KEC acquired the assets of Act II." (3d Am. Compl. ¶¶ 1, 3.) Plaintiffs point out that the Third Amended Complaint references "*Plaintiffs*' trade secrets" rather than Act II's trade secrets ("Plaintiffs" being defined as all three entities collectively). (*Id.* ¶¶ 162-164 (emphasis added)). Again, Defendants are entitled to know what entity or entities own the trade secrets. Plaintiffs can answer that question in an amended complaint and, indeed, they must.

The Complaint's most recent amendment seems to have been motivated by Plaintiff's fear of losing their claims. Although Plaintiffs acknowledge that K-FIVE was not a signatory and that

Wooten had no employment relationship with K-FIVE, they argue that they should be able to maintain their claims because Defendants have suggested they intend to argue that Act II—being out of business—is not the real party in interest; for that reason, Plaintiffs amended their Complaint to add KEC and K-Five to ensure their claims move forward. This is premature. Rule 17(a)(3) specifically instructs courts not to dismiss cases for real party errors until the plaintiff has had a reasonable time after objection to cure the error. The provision seeks to ensure that real party errors do not mechanically lead to the unjust forfeiture of claims. FED. R. CIV. P. 17(a)(3). Plaintiffs also perfunctorily claim that the additional parties were pled in the alternative. They are correct that litigants may plead in the alternative. However, to do so, it must be apparent from the pleading. *See, Holman v. Indiana,* 211 F.3d 399, 407 (7th Cir. 2000) (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1282 (2d ed. 1990)). The Third Amended Complaint does not make anything of the sort apparent.

Accordingly, Defendants' Motion to Dismiss is granted without prejudice as to K-Five for Counts II, III, IV, and VI and as to KEC for Counts III, IV, and VI. Counts I, V, VII, VIII, and IX are also dismissed with prejudice, consistent with this Court's earlier ruling.

## B. Partial Motion for Summary Judgment

### 1. Standard of Review

Wooten moves for summary judgment on Act II's breach of fiduciary duty claim. Summary judgment is appropriate when the admissible evidence reveals no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.,* 794 F.3d 871, 874 (7th Cir. 2015) (citation omitted).

### 2. What law applies?

Before deciding the question, the Court must first determine what law to apply. Wooten argues that Delaware law applies here because Illinois has adopted the internal affairs doctrine which applies the law of the state of incorporation to a breach of fiduciary claim (Act II was incorporated in Delaware). On the other hand, Plaintiffs argue that the internal affairs doctrine does not apply because the breach of fiduciary duty alleged here is not related to Act II's internal affairs and thus Illinois' general choice of law rules apply, which strongly favor Illinois law.

A federal court exercising diversity jurisdiction applies the choice-of-law rules in the forum in which it sits—here, Illinois law. *CDX Liquidating Trust v. Venrock Assocs.,* 640 F.3d 209, 212

(7th Cir. 2011) ("Illinois choice of law principles . . . govern this case because it was filed in Illinois.").

The "internal affairs" doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders — because otherwise a corporation could be faced with conflicting demands." *CDX,* 640 F.3d at 212 (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982)) (citations omitted).

Wooten starts off strong with recent Seventh Circuit authority that seems to be dispositive of the issue: Illinois choice of law principles "make the law applicable to a suit . . . for breach of fiduciary duty that of the state of incorporation." (Def.'s Mem. in Supp. Mot. Summ. J. at 2 (quoting *CDX Liquidating Trust v. Venrock Assocs.,* 640 F.3d 209, 212 (7th Cir. 2011)). To the Court's dismay, however, Wooten removed three key words from this quotation and replaced them with ellipses. These words are: "against a director." Undisputedly, Wooten is not a director. To imply that *CDX* always commands courts to use the law of the state of incorporation for all breach of fiduciary claims overstates the law. Hopefully, although not explicitly addressed, this alteration was made to reflect the trend of this district, discussed further below. Regardless, the internal

affairs doctrine may still apply here even if *CDX* is not dispositive of the issue.

Plaintiffs argue that this case escapes the internal affairs doctrine because the doctrine only applies to suits involving corporate governance or "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *CDX Liquidating Tr. v. Venrock Assocs.,* 640 F.3d 209, 212 (7th Cir. 2011) (quoting *Edgar,* 457 U.S. at 645). This suit, according to Plaintiffs, does not fall within that realm. They distinguish Wooten's case law by pointing out that each of her cases involves corporate governance. *See, CDX,* 640 F.3d at 212 (alleging breach of fiduciary duty claims against several former directors); *Northbound Group, Inc. v. Norvax, Inc.,* 5 F. Supp.3d 956, 979 (N.D. Ill. 2013) (dispute between various companies and directors largely involving an asset purchase agreement), *aff'd on other grounds,* 795 F.3d 647 (7th Cir. 2015); *Newell Co. v. Peterson,* 758 N.E.2d 903, 924 (Ill. App. Ct. 2001) (shareholder dispute). In support, Plaintiffs point to several cases that decline to apply the internal affairs doctrine where the issues do not involve corporate governance. *See, Edgar,* 457 U.S. at 645 (finding the internal affairs doctrine did not apply where the suit concerned transfers of stock by shareholders to a third-party); *LaPlant v. Nw. Mut. Life Ins. Co.,* 701 F.3d 1137, 1140 (7th Cir. 2012) (refusing to apply the internal affairs

doctrine where the class action did "not involve the identity or authority of the firm's officers or directors, and the annuitants [were] not shareholders"); *Tech. Sols. Co. v. Northrop Grumman Corp.*, 826 N.E.2d 1220, 1225 (Ill. App. Ct. 2005) (rejecting the application of the internal affairs doctrine where a breach of contract was at issue). Plaintiffs argue these cases are parallel to the case at bar.

In any event, none of Plaintiffs' cases involve an analogous breach of fiduciary duty claim and none of Wooten's cases involve a defendant outside the corporate governance structure. Thus, the parties speak past each other. Notably, two other courts in the Northern District have applied the internal affairs doctrine in such a case. In *Automated Concepts Inc. v. Weaver,* No. 99 C 7599, 2000 WL 1134541, at *5 (N.D. Ill. Aug. 9, 2000), a court from this district applied the internal affairs doctrine to an employer's breach of fiduciary claim, reasoning:

> At least one court has applied the doctrine to an employer's breach of fiduciary duty claims against employees regardless of whether they hold a director or officer position. *Regal–Beloit Corp. v. Drecoll,* 955 F. Supp. 849, 857–58 (N.D. Ill. 1996). The Court finds no plausible reason for distinguishing between an officer or director and an employee, and ACI provides none. After all, the application of a predictable rule of law with regard to mid-level employees is equally beneficial—especially where, as here, the employer does business in different states, i.e., Illinois, New Jersey, and New York.

This Court has reservations as to whether the purpose of the internal affairs doctrine supports the expansion of this doctrine.

"A single rule for each corporation's internal affairs reduces uncertainty and the prospect of inconsistent obligations; it also enables the corporate venturers to adjust the many variables of corporate life (including the contractual promises made to CEOs), confident that they can predict the legal effect of these choices." *Nagy v. Riblet Prod. Corp.,* 79 F.3d 572, 576 (7th Cir. 1996), *certified question answered,* 683 A.2d 37 (Del. 1996). This is especially salient for cases related to the operating agreement and the structure of the company because it ensures that one state law consistently applies, but the force of this reasoning lessens in the context of an employer-employee relationship. Corporations regularly adapt to various state laws in this context. Intuitively, it seems that where the employer-employee relationship exists is the substantive law that should govern. However, given that two courts from this district have applied the internal affairs doctrine in analogous cases and this Court has found no authority to the contrary, the Court will follow the trend of this district, noting its concerns regarding overly broad application. *See, id.* Thus, applying the internal affairs doctrine, Delaware law applies.

### 3. Under Delaware law, did Wooten owe a fiduciary duty to Act II?

As such, Wooten wins the choice-of-law battle, but not the war. Wooten relies on the rule that "only controlling members and managers of an LLC who are named as such in the LLC's operating

agreement owe fiduciary duties to the company" under Delaware law. (Mem. in Supp. Mot. Summ. J. at 3 (citing *Northbound Grp.,* 5 F. Supp.3d at 979-80)). Plaintiffs state that since Wooten was never a member, controlling member, or manager of Act II, she cannot owe a fiduciary duty to Act II. However, they misconstrue the breadth of the rule's application. The rule is intended to limit torts arising from mismanagement and disputes connected to the operating agreement; it does not govern the duties owed by employees who are not parties to the LLC's operating agreement (or even addressed within it). Employees are not governed by an LLC's operating agreement, but rather by employment contracts and traditional rules of agency. Many employees never read the operating agreement of the LLC and certainly have nothing to do with ownership decisions, even if the role they play in the business is vital. The LLC's operating agreement may modify fiduciary duties imposed by the parties to that agreement, but to widen its control beyond what is specifically contemplated—especially to completely eradicate the entire doctrine of agency—goes too far. *Cf. In re S. Canaan Cellular Invs., LLC,* 427 B.R. 85, 101 (Bankr. E.D. Pa. 2010), *aff'd in part, rev'd in part,* 2010 U.S. Dist. LEXIS 85420 (E.D. Pa. Aug. 16, 2010) ("[Delaware] law permits the LLC's operating agreement to define the duties (including fiduciary duties) owed to the entity by its members, managers, *or other parties to the agreement*." (emphasis added)).

All four cases Wooten relies on concern individuals who were members, managers, or otherwise had a defined role in corporate governance. *See, Northbound Grp.,* 5 F. Supp.3d at 979-80 (counter-defendants were officers and employees of the LLC and the suit primarily concerned an asset purchase agreement); *S. Canaan Cellular Invs., LLC v. Lackawaxen Telecom, Inc.,* 2010 U.S. Dist. LEXIS 85420, at *22 (E.D. Pa. Aug. 16, 2010) (defendant was member of the LLC); *Kuroda v. SPJS Holdings, L.L.C.,* 2010 Del. Ch. LEXIS 57, at *25 (Del. Ch. March 16, 2010) (defendant was a non-managing member of the LLC); *Coventry Real Estate Advs. v. Developers Diversified Realty Corp.,* 923 N.Y.S.2d 476, 478 (N.Y. S. Ct. 2011) (defendant was a minority member of the LLC). None of the cases involve individuals whose only relation to the LLC was as an employee. Plaintiffs do not assert Wooten owed fiduciary duties by virtue of her status as an investor, member, or manager of Act II; rather, they assert that Wooten owed fiduciary duties as a key managerial employee and as an agent.

Certainly, it is true that Delaware has a default rule concerning the fiduciary duties imposed on members and managers and that Delaware also allows those default rules to be modified by contract, but that does not mean that principles of agency do not apply. Under Delaware law, "key managerial personnel" owe fiduciary duties to the company based on fundamental principles of agency law. *Sci. Accessories Corp. v. Summagraphics Corp.,* 425

A.2d 957, 962 (Del. 1980) (internal citations omitted) ("These principles and limitations of agency law carry over into the field of corporate employment so as to apply not only to officers and directors but also to key managerial personnel."). Further, even if an individual does not qualify as a key managerial employee, if the individual "undertake[s] certain duties and obligations as an agent of [the company]," he is still bound by the traditional principles of agency. *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.,* No. 3290, 2009 WL 1387115, at *30 (Del. Ch. 2009), *aff'd* 988 A.2d 938 (Del. 2010); *see also, Wantickets RDM, LLC v Eventbrite, Inc.,* No. 654277, 2017 N.Y. Misc. LEXIS 2780, at *9 (N.Y. Sup. Ct. July 21, 2017).

Wooten argues that the principles of those cases apply only to corporations and not LLCs. However numerous cases find employees of LLCs owe fiduciary duties to their employer. *See, e.g., Wayman Fire Prot., Inc. v Premium Fire & Sec., LLC,* 2014 WL 897223, at *20 (Del. Ch. 2014) (reasoning that the defendant did not owe general fiduciary duties to the company, but did owe duties to the company under principles of agency law); *Triton Const.,* 2009 WL 1387115, at *10 (holding that former employee breached fiduciary duty under agency law, applying Delaware law); *Aquent LLC v. Stapleton,* 65 F. Supp.3d 1339, 1349 (M.D. Fla. 2014) (applying Delaware law and holding that a former employee of an LLC—who was not a manager—owed fiduciary duties to the LLC).

The counterfactual underscores the wisdom of holding that principles of agency still apply to employees of an LLC. If Plaintiffs were correct that fiduciary duties are only owed to members or managers and that every employee of an LLC had no fiduciary duty to act for the benefit of its employer, imagine the egregious acts that would be countenanced by the law. No, certainly the ability to modify fiduciary duties owed by members and managers does not eradicate all duties owed by agents. In fact, this distinction has been addressed in other cases:

> Eventbrite misguidedly relies on Delaware law regarding, for instance, when a member or manager of an LLC (or an officer or director of a corporation) owes a fiduciary duty to the company, *as opposed to when an agent or employee owes such duties*. Thus, the case law cited by Eventbrite addressing issues such as whether non-controlling minority members of an LLC owe fiduciary duties to the LLC is inapposite.

*Wantickets,* No. 654277, 2017 N.Y. Misc. LEXIS 2780, at *9 n.6 (emphasis added).

> These cases stand for the proposition that minority members of an LLC do not owe a fiduciary duty to other members when they are neither managers nor controlling members. None of the cases cited, however, contains the facts presented here—*allegations that Third Party Defendants took actions not simply as minority members, but as directors of the company,* funneling money to themselves and depriving Digital of its rightful disbursements.

*Dancesport Videos Ltd. Liab. Co. v. Kunitz,* No. CV11-1850, 2012 U.S. Dist. LEXIS 156624, at *11 (D. Ariz. Nov. 1, 2012) (emphasis added) (internal citations omitted). Thus, Wooten may owe

fiduciary duties to Act II if the Plaintiffs establish that she was a key managerial employee and/or an agent of Act II. Whether those duties were breached we leave for another day. Wooten's Motion for Summary Judgment on the breach of fiduciary duty claim is denied.

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 199] is granted. Wooten's Partial Motion for Summary Judgment [ECF No. 202] is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  3/14/2018